**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---------------------------------------------------------------- x

**BRAILSFORD & DUNLAVEY, INC.**
1140 Connecticut Avenue, NW, Suite 400
Washington, DC 20036,

         Petitioner,

v.


**NASHVILLE SOUNDS BASEBALL CLUB**
**LIMITED PARTNERSHIP,**
Greer Stadium
534 Chestnut Street
Nashville, TN 37203

         Respondent.

---------------------------------------------------------------- X

:
:
:   **Civil Action No.**
:
:   **APPLICATION TO CONFIRM**
:   **ARBITRAL AWARD**
:
:
:
:
:
:
:
:
:
:
:
:

       Comes now Petitioner Brailsford & Dunlavey, Inc. ("B&D"), by and through undersigned counsel, and petitions this honorable Court to confirm an arbitral award in the amount of $569,888.90 plus interest and costs, entered in B&D's favor against Respondent the Nashville Sounds Baseball Club Limited Partnership ("NSBC") and to enter judgment in favor of B&D on the arbitral award.

## JURISDICTION & VENUE

    1.     The Court has jurisdiction over this application pursuant to 9 U.S.C. § 9 (Federal Arbitration Act), 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity). The citizenship of the parties is diverse and the amount in controversy exceeds $75,000.00, exclusive interest and costs. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

**PARTIES**

2.        B&D is incorporated under the laws of the District of Columbia with its principal place of business in the District of Columbia, and is a citizen of the District of Columbia.  B&D is a facility planning and project management company that specializes in managing the design, construction and operation of sports, recreation, education, and similar "quality of life" facilities.

3.        NSBC a limited partnership organized under the laws of Tennessee, with its principal place of business in Nashville, Tennessee.  On information and belief, none of the partners in NSBC is a citizen of the District of Columbia, but are all citizens of the State of Illinois.  NSBC is a minor league baseball team affiliated with the Milwaukee Brewers.

**FACTUAL BACKGROUND**

4.        The underlying arbitration arose because the NSBC improperly refused to pay B&D professional service fees and other related amounts that were due and owing for work that B&D did in connection with a project to develop a new baseball stadium for NSBC in Nashville, Tennessee.

5.        B&D demanded arbitration pursuant to ¶ 8 of its contract for services with NSBC, the Project Management Agreement ("PMA"), which provided for B&D and NSBC to resolve disputes by binding arbitration under the administration of the American Arbitration Association.[1]  A true and correct copy of the PMA is attached hereto as Exhibit ("Ex.") A.

6.        NSBC was served with B&D's demand for arbitration, and participated fully in the arbitral proceedings, including:

- Selecting and consenting to the appointment of James F. Lee, Jr., as arbitrator.

- Filing a responsive answer and a counterclaim against B&D.

---

[1] Although the arbitration proceedings were brought against "Amerisports LLC – The Nashville Sounds Baseball Club," NSBC answered B&D's demand and conceded that it was the proper party to the PMA and therefore to the arbitral proceedings.

- Providing document discovery to B&D.

- Filing a motion for summary judgment against B&D, fully briefing that motion, and participating in oral argument on the motion before Arbitrator Lee.

7.       Arbitrator Lee held a three-day plenary hearing on the merits of the dispute between B&D and NSBC on November 28, 29, and 30 in Washington, D.C.

8.       Both B&D and NSBC participated fully in the hearing and were represented by counsel.[2]

9.       At the hearing, NSBC presented evidence and a witness, Glenn Yaeger, NSBC's general manager, and cross examined B&D's witnesses.

10.      Following the hearing, Arbitrator Lee issued a reasoned award (the "Award"), denying NSBC's counterclaim and awarding B&D the amount of $569,888.90 plus interest and costs.  A true and correct copy of the Award is attached hereto as Ex. B.

11.      No impediment exists to prevent this Court from confirming the Award as made by the arbitrator and entering judgment on it.

## PRAYER FOR RELIEF

12.      Paragraphs 1 through 11 are realleged and incorporated herein by reference.

13.      Judicial review of arbitral awards is extremely limited.  *See Kurke v. Oscar Gruss and Son, Inc.*, 454 F.3d 350, 354 (D.C. Cir. 2006) (affirming confirmation of arbitral award). Where any justification for an award can be inferred.  *Id*. at 354-55.  Arbitrator Lee spelled out his reasons for the Award, which was entirely justified.  No ground exists for failing to confirm it

---

[2] NSBC was represented initially in the arbitration by the firm of Frost Brown Todd LLC, which withdrew shortly after Arbitrator Lee set a schedule for the proceedings.  John Devaney, Esq, and John Roche, Esq. of Perkins Coie LLP, 607 Fourteenth Street N.W., Washington, D.C., 20005-2003, replaced Frost Brown Todd and represented NSBC for rest of the proceedings, including document production, dispositive motion practice and the plenary hearing.

as it was made by the arbitrator.

14.     The Award satisfies the criteria for confirmation under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* and under federal law.

WHEREFORE, Petitioner B&D requests that this Court confirm the Award and enter judgment in the amount awarded to B&D which consists of $569,888.90 plus interest, from November 30, 2007, and costs, as set forth in the Award, plus fees and the costs of this suit, and for such other and further relief as this Court deems just and proper.

BAACH ROBINSON & LEWIS PLLC

By: _____
Duane K. Thompson, Esq. (376180)
Jonathan D. Fine, Esq. (491185)
1201 F Street, NW, Suite 500
Washington, DC 20004-1225
Tel: 202-833-8900
*Attorneys for Petitioner Brailsford & Dunlavey*

Dated: January **31**, 2008
        Washington, D.C.

# EXHIBIT A



**BRAILSFORD & DUNLAVEY**
Facility Planners · Project Managers
Catalysts for Building Constructs

August 15, 2006

Mr. Glenn Yaeger
Amerisports – The Nashville Sounds Baseball Club
534 Chestnut Street
Nashville, TN 37203.
(615) 242-4371

RE:    PROJECT MANAGEMENT AGREEMENT

Dear Mr. Yaeger:

Brailsford & Dunlavey ("B&D" or "Project Manager") is pleased to submit this formal proposal to provide project management services to The Nashville Sounds Baseball Club ("Sounds" or "Owner") with respect to the development of the Nashville Sounds New Ballpark ("Project") and related coordination on ancillary development within the site's boundaries. B&D has provided planning and feasibility consulting services to date on the project and is now prepared to commence this phase, which will include management of the design and construction of the new ballpark, coordination with the municipal agencies, and coordination with a developer of the non-ballpark related improvements to the site. Should you deem our proposal acceptable, please return a signed copy whereupon this letter shall serve as our agreement regarding this engagement ("Agreement").

<u>Background and Purpose</u>

It is understood that The Nashville Sounds Baseball Club has undertaken an effort to bring the highest quality family entertainment to downtown Nashville, in the form of professional baseball, and that The Nashville Sounds Baseball Club wishes to continue to enlist B&D's expertise in the development of a professional baseball facility. The Sounds wish to retain B&D to serve as the Owner's representative and primary interface with the architect, the contractor, and other consultants with respect to the design and construction of the proposed ballpark on the downtown Nashville site known as the "Thermal Plant Site" bordered by 1st Ave., Gateway Blvd., the Shelby St. Bridge, and the Cumberland River. In this capacity, B&D shall address project approvals, permitting, design, coordination with ancillary development initiatives by private developers, and construction issues so as to ensure the development of Project at the highest levels of quality and in keeping with the objectives of the Sounds and the City while keeping the Sounds fully informed concerning issues relating to scheduling, design, construction, and budgeting as applicable.

Mr. Glenn Yaeger
August 14, 2006
Page 2

<u>Covenants, Terms and Conditions</u>

1.    Scope of Work.

This Agreement acknowledges certain tasks to be performed by Brailsford & Dunlavey while working in coordination with the Owner, serving in their best interest, and following good management practices.

The tasks detailed below combine to provide management and oversight of the design, construction, and close-out phases of this Project, to ensure that the Owner's role in meeting responsibilities toward budget, schedule, and quality is effective and efficient. B&D's general responsibilities include the following and are outlined in Exhibit "A" with specific reference to tasks and associated fees:

- Forewarning the Owner of key decision points and action items.
- Ensuring that the Owner is equipped with all of the information necessary to make decisions quickly and with confidence.
- Executing the Owner's decisions with efficiency.

Project Review and Confirmation

- Confirmation of the project components' feasibility, and refinement thereto resulting in the issuance of the following:
  - A program statement;
  - A project budget encompassing the hard costs of construction and the soft costs;
  - A proposed project schedule; and
  - A proposed cashflow schedule.

Team Initiation

- Coordination of the A&E services contract negotiations and submission of the resulting contract to the Owner for approval.
- Management of the RFP process for the selection of a Construction Manager ("CM") with preconstruction services and a Guaranteed Maximum Price ("GMP") including drafting the RFP, conducting a pre-proposal meeting, moderating a shortlisting session, managing the interview process, moderating a selection meeting, and providing feedback to the proposers.
- Coordination of the preconstruction services contract negotiations and submission of the resulting contract to the Owner for approval.
- Management of the selection and contracting of other independent contracts as needed such as topographical survey, materials testing, telecommunications, audio-visual, and security specialists.
- Issuance and updating of team directory.

Design

- Leading regular design meetings representing the Owner's best interests, guiding the Owner's decisions, and advising on programmatic and building type issues.
- Internal recordation, documentation, issuance, and filing of meeting notes and communications.

Mr. Glenn Yaeger
August 14, 2006
Page 3

- Issuance of action item lists as appropriate to assist the team with prioritizing tasks and recording their completion.
- Regular updating of the project budget and cashflow projections, with commitments and actual expenditures.
- Review of all invoices related to project budget commitments.
- Issuance of monthly reports including a review of the project schedule and budget.
- Issuance of formal, detailed design review memos and drawing mark-ups at 100% Schematic Design, 100% Design Development, and the GMP point of Construction Documents, for conformance to program and design intents, constructability, operating efficiency, and coordination.
- Monitoring and assisting the architect as appropriate, in researching, submitting, and securing approvals from all applicable agencies.
- Monitoring and assisting the architect as appropriate, in researching, submitting, and securing services from all applicable utilities.
- Review of cost estimates at 100% Schematic Design, 100% Design Development, and the GMP point of Construction Documents including any value engineering sessions, noting that Brailsford & Dunlavey will not undertake formal cost estimating, but will oversee the review of the estimates provided by the architect and the contractor.
- Updating of the program statement as appropriate at key milestones.
- Review of proposed phasing, staging, and construction logistics.
- Coordination of the bid packaging process addressing schedule, cost, and impact to the Sound's operational activities.

Cost of Work (Direct Construction Budget)

- Establishment of requirements for subcontractor package bids.
- Review of overall proposed Schedule of Values.
- Review of actual proposed General Conditions.
- Coordination of the construction contract negotiations and submission of the resulting contract to the Owner for approval.

Construction

- Leading regular construction meetings and site walks representing the Owner's best interests, guiding the Owner's decisions, and advising on a range of issues.
- Internal recordation, documentation, issuance, and filing of meeting notes and communications.
- Issuance and tracking of action item lists as appropriate to assist the team with prioritizing tasks and recording their completion.
- Regular updating of the project budget and cashflow projection, with commitments and actual expenditures.
- Review of all invoices, pay applications, and releases of liens related to project budget commitments.
- Issuance of monthly reports including a review of the project schedule and budget.
- Monitoring and assisting the contractor as appropriate, in securing public approvals and certificates from all applicable agencies.
- Monitoring and assisting the contractor as appropriate, in securing services from all applicable utilities.
- Management and negotiation of propose change orders including the standards for documentation to coordinate with Owner for full approval or rejection.
- Management and documentation of any Owner-initiated construction directives.

NS00004

Mr. Glenn Yaeger
August 14, 2006
Page 4

- Coordination of the Sound's independent contracts and services as appropriate through construction.

Close-out

- Participation in the punchlist walk-throughs and subsequent approvals.
- Coordination of the delivery of electronic as-built drawings from the architect, and operations manuals from the contractor.
- Documentation of the final reconciliation of the budget and the schedule.

2.     Staffing and Interaction.

B&D's President, Chris Dunlavey, shall direct the overall work effort and Jason Thompson, Associate shall coordinate the day-to-day work. B&D shall assign appropriate staff to provide additional assistance as necessary. B&D may reassign or substitute personnel upon consent by the Owner, which consent shall not be withheld unreasonably, or upon the unavailability of previously assigned personnel due to illness or other factors beyond B&D's control. The Owner shall provide B&D with timely input and feedback, as well as access to information, facilities and other personnel upon reasonable request. Mr. Glenn Yaeger shall serve as B&D's point of contact for purposes of providing instructions to B&D concerning this engagement. Instructions shall be deemed to have been delivered only if communicated or confirmed within a reasonable period of time by Mr. Glenn Yaeger. The Owner may substitute another representative to serve as B&D's point of contact upon reasonable written notice.

3.     Timetable.

It is understood that the Project Manager has already begun its work under an interim agreement (the fees for which shall be included within the Service Fee delineated in Section 4.A. of this Agreement) and shall continue its work upon the Owner's delivery of an executed copy of this Agreement or the Owner's other written acceptance, whichever is earlier. The targeted completion date for the Project is the Opening Day of the 2008 regular season for the Nashville Sounds. The Owner shall devote best efforts to providing timely and accurate information in accordance with Section 2 of this Agreement. Both parties shall use best efforts to coordinate specific dates for meetings with key participants and other events necessary to the advancement of the Project.

4.     Compensation and Method of Payment.

A.     For services rendered by Project Manager as specified in Section 1 of this Agreement, B&D shall be compensated fixed Service Fees equal to 3.5% of the currently estimated Project hard costs, equaling a fixed fee of One Million One Hundred and Sixty One Thousand Dollars ($1,161,000). In addition, a previously agreed-upon fee for Pre-Planning services of $150,000 will become due and payable upon the execution of this Agreement in consideration of services rendered in the development of the Project over previous years.

B.     In addition, B&D shall be reimbursed for out-of-pocket expenses incurred on the Sounds' behalf. Reimbursable expenses include, but are not limited to, air line and train tickets, meals, postage, overnight delivery service, photocopying charges, long-distance telephone charges and mileage where applicable. B&D shall use best efforts to minimize expenses consistent with B&D's professional standards for timely completion of quality work product.

NS00005

Mr. Glenn Yaeger
August 14, 2006
Page 5

C.     The Owner shall compensate B&D in equal monthly installments that collectively equal total Service Fees calculated in accordance with Section 4.A and Exhibit A of this Agreement.   B&D shall submit to the Owner monthly invoices for fees and expenses calculated in accordance Section 4.A and Exhibit A of this Agreement, together with any balance forward.    The Owner shall be entitled to receive a two percent (2%) quick pay discount for fees paid within 21 days from the date of invoice.  B&D shall be entitled to assess a finance charge of prime rate plus one percent (1%) for any fees and expenses that are not paid sixty (60) days after the date of invoice.   The Owner shall designate a representative to serve as B&D's point of contact for the submission of invoices and questions concerning their payment status.

D.     Notwithstanding anything to the contrary in this Agreement, B&D shall be entitled to additional compensation if, subsequent to its acceptance, (i) the Owner materially changes the Project's scope, objectives and/or timetable; (ii) the Owner otherwise requests or causes B&D to perform substantial additional services not contemplated in Section 1 and Exhibit A to this Agreement; or (iii) the Owner fails to provide instructions or requested information in a timely manner, makes substantial corrections to instructions or information previously provided or makes personnel changes that materially affect B&D's performance of this Agreement.  In such event, the parties shall attempt to negotiate a modification or change order in accordance with Section 21 of this Agreement.  In the absence of an agreement, the parties reserve their respective rights concerning the fair value of any services provided beyond the scope of Section 1 and Exhibit A of this Agreement.

E.     B&D's Federal Tax Identification Number is 52-1847085.

5.     Rights to Work Product and Intellectual Property.

A.     The Owner shall own the rights to studies, reports and all other written output in the course of work performed pursuant to this Agreement ("Work Product").  As author of Work Product, B&D shall have the right to use and market all or portions of such product.

B.     The Owner shall be entitled to use Work Product for purposes of acting on information or recommendations contained therein, providing background information or guidance for any other project that the Owner seeks to evaluate or any other purpose related to the Owner's institutional mission. B&D shall be entitled to use Work Product in the normal course of its ordinary business activities.  B&D shall not, without the Owner's prior written consent, disclose Confidential Information to any third party unless such disclosure is necessary to enable B&D to perform this Agreement, is part of a general statistical summary that does not single out the Owner, or is required by law.  As used herein, the term "Confidential Information" means any information relating to the Owner or any of its employees, students or other affiliated persons or legal entities that is not within the public domain or that the Owner has specifically designated as confidential by written notice to B&D.

C.     Neither party shall assign, grant or license their copyright interests in Proprietary Models to any third party without the prior written consent of the other party, which consent shall not be withheld unreasonably.  Each party shall cooperate with the other party's reasonable efforts to enforce copyrights in Proprietary Models against infringing third parties.  If the Owner is required by law to release Proprietary Models to third parties, the Owner shall redact or otherwise protect B&D's Proprietary Models (defined in Subsection 5.D below) to the fullest extent permitted by law.

Mr. Glenn Yaeger
August 14, 2006
Page 6

D.     B&D shall retain Ownership of all patents, trademarks, copyrights, trade secrets, registered designs, service marks, trade names, logos, inventions and all other intellectual property rights relating to B&D's Proprietary Models and other proprietary software, analytical models, methods and techniques ("Proprietary Models") B&D owns and uses in performing work pursuant to this Agreement. B&D hereby grants a nonexclusive license to the Owner to copy, display, distribute and otherwise use Proprietary Models for the Owner's own internal, noncommercial use provided that they are not provided to third parties without B&D's prior express written consent.

6.     Public Relations.

The Owner shall be solely responsible for the preparation and dissemination of press releases and other information concerning its assessments, objectives and positions concerning the Project. B&D shall be entitled to issue press releases, respond to media inquiries and disseminate promotional materials concerning its engagement as a consultant to the Owner and attainment of key milestones. Any such communications shall be subject to the provisions of this Agreement relating to Confidential Information set forth in Section 5 above. B&D shall provide a draft of all written press and promotional materials to the Owner at least five business days prior to release. The Owner shall have the right to make reasonable revisions to such materials within that five-day period. In all events, the Owner shall provide written notification to B&D within the five-day period concerning any information the Owner does not wish disclosed.

7.     Termination.

Either party may terminate this Agreement for Cause (defined as a material breach of this Agreement, gross neglect of duty or willful misconduct) after affording the other party reasonable notice and opportunity to cure. The Owner may terminate this Agreement without Cause at any time upon sixty (60) days prior written notice to B&D. Notice of termination shall be provided by certified mail, return receipt requested, addressed to Chris Dunlavey or Mr. Glenn Yaeger as applicable. Upon termination without Cause, B&D shall receive payment for all outstanding invoices, work in process and expenses incurred up to the date of termination. Upon termination with or without Cause, each party shall be entitled to assert all claims and seek all remedies otherwise available to that party in accordance with the Dispute Resolution procedures stated in Section 8 below. The parties' respective rights and obligations under Sections 5 and 10 of this Agreement shall survive termination.

8.     Dispute Resolution.

A.     The parties shall attempt to settle any dispute, disagreement or claim arising out of, or in any way related to, this Agreement through good faith consultations between appropriate representatives of each party. Subject to the provisions of Subsection 8.B below, any dispute, disagreement or claim that is not resolved to the parties' mutual satisfaction within thirty (30) days (or such longer period as may be mutually agreed at the time) from the date either party invokes this provision through written notice to the other party, shall be resolved through binding arbitration in the District of Columbia in accordance with the rules and procedures of the American Arbitration Association ("AAA"), as amended by this Agreement. The parties shall share the costs of arbitration, including the fees and expenses of the arbitrator, equally unless the arbitration award provides otherwise. Each party shall bear the legal fees and expenses incurred in preparing and presenting its case. The arbitrator's authority to grant relief shall be subject to the provisions of this Agreement, the United States Arbitration Act ("USAA") and the ABA-AAA Code of Ethics for Arbitrators in Commercial Disputes. The arbitrator's decision shall be final,

Mr. Glenn Yaeger
August 14, 2006
Page 7

binding and enforceable in any court of competent jurisdiction. All post-award proceedings shall be governed by the USAA.

B.    Nothing in this Agreement shall be construed to prevent either party from moving a court of competent jurisdiction for a temporary restraining order, preliminary injunction, or other emergency relief to restrain the other party from releasing Work Product, Improvements or Proprietary Models to a third party, or seeking to transfer intellectual property rights thereto, in contravention of Section 5 above. Each party shall be entitled to assert damage claims in such proceedings.

C.    Nothing in this Section 8 shall be construed to limit or otherwise affect the Owner's right to terminate this Agreement with or without Cause pursuant to the provisions of Section 7 of this Agreement.

9.    Independent Contractor.

In the performance of its duties and obligations under this Agreement, B&D is an independent contractor. Neither B&D nor any of its employees, agents or subcontractors shall be considered employees, servants, partners or joint venture partners of or with the Owner by reason of this Agreement.

10.    Third Party Claims.

Brailsford & Dunlavey shall be held harmless against third party claims, liability and expenses (including judgments, penalties, fines, settlements, court costs and awards of attorneys fees) arising from the Owner's wrongful or negligent conduct, errors or omissions in the course of performing this Agreement. Likewise, the Owner shall be held harmless against third party claims, liability and expenses (including judgments, penalties, fines, settlements, court costs and awards of attorneys fees) arising from Brailsford & Dunlavey's wrongful or negligent conduct, or errors or omissions in the course of performing this Agreement. Nothing in this Agreement shall be construed to require either party to obtain insurance to protect the other party against third party claims, liability, and expenses.

11.    Insurance.

B&D represents and warrants that it maintains statutory workmen's compensation insurance, employer's liability insurance which law requires, comprehensive general liability insurance, and professional liability insurance in the amount of $1,000,000.00 per policy, covering personal and bodily injury, as well as property damage, with the Owner being listed as an additional insured. At the request of the Owner and prior to beginning any work under this agreement, B&D will furnish the Owner with copies of all certificates of insurance.

12.    Limitation of Liability.

Neither party shall be liable to the other party for any consequential, exemplary, special, or punitive damages sounding in contract or tort except as may arise from breach of Section 5 above or as may be necessary to provide indemnification in accordance with Section 10 above against actions or claims asserted by third parties. B&D shall have no liability for the consequences of instructions or other communications conveyed directly from the Owner to contractors outside the system of meetings established by B&D for project coordination. In no

Mr. Glenn Yaeger
August 14, 2006
Page 8

event shall B&D have any liability for scheduling delays, cost overruns, or design or construction defects occurring during the Owner's implementation of the Project.

13.    Estimates and Projections.

Estimates and projections relating to development budgets, finance, and other aspects of B&D's analysis will be based upon reasonable assumptions, information provided by the Owner or other sources, reasonable analytical techniques, and professional judgment. Actual costs and financial performance, however, will be influenced by market and other external factors. Accordingly, B&D does not warrant or guarantee that its estimates and projections will accurately predict the Owner's actual costs and financial performance.

14.    Waiver.

No waiver of any of the terms of this Agreement or of any breach of its terms shall be effective unless such waiver is in writing and signed by the waiving party.  No waiver of any breach shall be deemed a waiver of any other subsequent breach.

15.    Severability.

If any term, covenant, or condition contained herein is adjudged invalid or unenforceable to any extent, the remainder of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

16.    No Personal Liability.

All actions or claims against either the Owner or B&D arising under or relating to this Agreement shall be made only against such party as a corporation or other legal entity, and any liability relating thereto shall be enforceable only against the corporate assets of such party.

17.    No Third Party Beneficiary.

The provisions of this Agreement are for the exclusive benefit of the Owner and B&D.  No third party may seek to enforce or benefit from those provisions.

18.    Non-solicitation

In consideration of B&D's agreement to provide services pursuant to this Agreement through valued employees who may have specialized knowledge of B&D's trade secrets, intellectual property and proprietary methods, the Owner agrees, represents, and warrants that, for a period of six (6) months from the later of the cancellation or completion of the Project, the Owner shall not, without B&D's prior express written consent, solicit or hire as an employee of the Owner, or solicit or retain as an independent contractor to the Owner, any current or former employee of B&D to perform professional services for the Owner that are substantially similar in nature and/or scope to the professional services which that person was assigned to perform on the Project while employed by B&D. This paragraph may be specifically enforced in any court of competent jurisdiction, and attorneys' fees shall be awarded to B&D in any such enforcement action, regardless of any other provision of this Agreement.

19.    Assignment; Subcontracting.

Mr. Glenn Yaeger
August 14, 2006
Page 9

Neither party may assign this Agreement, in whole or in part, without the other party's prior written consent. B&D shall be entitled to engage subcontractors to assist its performance of the Agreement with the Owner's prior written consent, which consent shall not be withheld unreasonably, provided that B&D's engagement of any subcontractor shall not relieve B&D of its obligations to the Owner under this Agreement or impose any liability or obligations upon the Owner to any such subcontractor.

20.    Counterparts.

This Agreement may be executed in counterparts, and by each party on separate counterparts, all of which together shall constitute one agreement binding on the parties hereto, notwithstanding that all parties are not signatories to the original or the same counterpart. Each party represents and warrants that the person signing this Agreement on its behalf has full authority to bind such party to the terms and conditions stated herein.

21.    Governing Law.

This Agreement shall be governed by and interpreted in accordance with the laws of the District of Columbia without regard to the District's choice of law principles.

22.    Entire Agreement; Modification.

This Agreement is the complete and exclusive statement of the parties' understanding and supersedes all other agreements and communications with respect to its subject matter, including any inconsistent terms contained in a purchase order issued in regard to the subject matter. This Agreement may not be modified, amended, or waived in whole or in part, except by subsequent written agreement signed by the Owner and B&D.

The following Exhibits are hereby incorporated into and made a part of this Agreement:

Exhibit "A"

NS00010

Mr. Glenn Yaeger
August 14, 2006
Page 10

If the foregoing conforms to your understanding of our agreement, please convey your acceptance in writing and/or sign the enclosed copy of this letter where indicated and return a copy to us. We look forward to a very pleasant and productive working relationship.

Sincerely,
BRAILSFORD & DUNLAVEY

Christopher S. Dunlavey, AIA
President


AGREED AND ACCEPTED .

The Nashville Sounds Baseball Club

Signed: _____

Name: _____

Title: _____

Date: _____


NS00011

The Nashville Sounds Baseball Club

List of Project Manager's Tasks

⚙ BRASFIELD & GORLAVEY

**PM Fee:**
$1,160,000.00

**Team Initiation**

| | |
|---|---|
| 1 | Managed RFP process for Architecture & Engineering services selection (RFP, distribution, preproposal meeting, short list, interviews, selection, feedback) |
| 2 | Guide Architecture & Engineering services contract negotiations (services, fees, schedule, contract documents, terms) |
| 3 | Manage RFP process for Construction services selection (RFP, distribution, preproposal meeting, short list, interviews, selection, feedback) |
| 4 | Guide PreConstruction Services contract negotiations (services, fees, schedule, terms) |

**Design**

| | |
|---|---|
| 1 | Coordinate and manage Kick-off Meeting and issue minutes |
| 2 | Issue and update Team Directory |
| 3 | Participate in weekly/regular progress meetings (represent Owner responsibilities, guide Owner decisions, advise on programmatic and building type issues |
| 4 | Document and Be owner's perspective internal notes of meetings and communications (reference for confirming formal mtg minutes, record tracking of critical issues) |
| 5 | Issue weekly action items (prioritize tasks, identify set-in-court OAC, record of tasks completed) |
| 6 | Manage internal consensus building (meet Owner responsibilities to the project) |
| 7 | Coordinate Sound's relationship with municipal development authorities |
| 8 | Coordinate Sound's relationship with developers of ancillary projects adjacent to the site |
| 9 | Generate and regularly update full project budget (hard and soft cost line items; budget/commitments/actual expenditures) |
| 10 | Review and approve all invoices related to project budget commitments |
| 11 | Facilitate project financing including generating and updating cash flow schedule |
| 12 | Issue a Monthly Report (update on activities underway and anticipated, on schedule, on budget) |
| 13 | Monitor and maintain project schedule (reach design and construction milestones, pursue and document delays) |
| | Issue design reviews/markups of drawings and specifications (for Program Reconciliation (SF, Efficiency, Functionality), FF&E Coordination), |
| 14 | 50% Schematic Design |
| 15 | 100% Schematic Design |
| 16 | 30% Design Development |
| 17 | 60% Design Development |
| 18 | 100% Design Development |
| 19 | 35% Contract Documents |
| 20 | 85% Contract Documents |
| | Issue updates to Program Document |
| 21 | 100% Schematic Design |
| 22 | 100% Design Development |
| | Manage review of cost estimates (industry benchmarking, second estimate for comparison if required, determine elements of opportunity and concern, cost/agency level) |
| 23 | 100% Schematic Design |
| 24 | 100% Design Development |
| 25 | GMP Milestones to be determined (Value Engineering focus, options for alternates, contractor installed FF&E, assumptions and allowances) |
| 26 | Review phasing, staging, and construction logistics |
| 27 | Monitor and participate in researching, submitting and securing approvals from all applicable agencies |
| 28 | Monitor and participate in researching, submitting and securing services from all applicable utilities |
| 29 | Coordinate Sound's independent contracts and services (topographical survey, materials testing, construction quality control inspection, telecommunications, AV, security) |
| 30 | Coordinate bid packaging process (address impact to Sound's operational activities, cashflow schedule, CM contract details) |
| 31 | Coordinate proposed change order process (standards for documentation and approval, categorized by driver) |
| 32 | Identify key submittals requiring Owner approval with projected schedule |
| 33 | Coordinate Furniture, Fixtures & Equipment (FF&E Design Coordination memo and cutsheets, itemized budget, specifications, potential vendor list/RFPs/bid sheets, purchasing guide) |

Exhibit "A"

NS00012

The Nashville Sounds Baseball Club
List of Project Manager's Tasks  BRASFIELD S. DUNLAVY

**PM Fee:**

**Cost of Work (Direct Construction Budget)**

| | |
|---|---|
| 1 | Establish requirements for subcontractor package bids (edited AIA A709 for minimum coverage (3). Owner review of all bids with discretion to reject a proposed bidder) |
| 2 | Review overall proposed Schedule of Values |
| 3 | Review actual proposed General Conditions |
| 4 | Guide Construction Manager contract negotiations (fee, general conditions, schedule, contract documents, terms) |

**Construction**

| | |
|---|---|
| 1 | Coordinate and manage Pre-construction Conference and issue minutes |
| 2 | Update Team Directory |
| 3 | Participate in weekly/regular progress meetings (represent Owner responsibilities, guide Owner decisions, advise on programmatic and building type issues |
| 4 | Document and file owner's perspective internal notes of meetings and communications (reference for confirming formal mtg minutes, record tracking of critical issues) |
| 5 | Issue weekly action items (prioritize tasks, identify ball-in-court O/A/C, record of tasks completed) |
| 6 | Manage consensus building (meet Owner responsibilities to the project) |
| 7 | Coordinate Sound's relationship with municipal development authorities |
| 8 | Coordinate Sound's relationship with developers of ancillary projects adjacent to the site. |
| 9 | Regularly update full project budget (hard and soft cost line items; budget/commitments/actual expenditures) |
| 10 | Review and approve all invoices related to project budget commitments |
| 11 | Review and approve all pay applications and release of liens |
| 12 | Manage and negotiate Proposed Change Orders (review, negotiate and approve with sufficient documentation, log and categorize by driver) |
| 13 | Update cash flow schedule |
| 14 | Issue a Monthly Report (update on activities underway and anticipated, on schedule, on budget) |
| 15 | Monitor and maintain project schedule (reach design and construction milestones, pursue and document delays) |
| 16 | Monitor and participate in securing approvals and certificates from all applicable agencies |
| 17 | Monitor and participate in securing services from all applicable utilities |
| 18 | Coordinate Sound's independent contracts and services (topographical survey, materials testing, construction quality control inspection, telecommunications AV, security) |
| 19 | Coordinate FF&E (itemized budget/commitments/actual expenses, delivery dates, installations) |
| 20 | Participate in weekly/regular progress jobsite walks (advise on quality, function, programmatic and building type issues) |
| 21 | Coordinate weekly progress photographs |
| 22 | Monitor RFI log and respond to Owner directed RFIs |
| 23 | Monitor submittal transmittal log and coordinate review and Owner approval of key submittals/shop drawings |
| 24 | Manage and document Owner initiated directives |
| 25 | Coordinate commissioning activities |
| 26 | Assist with punchlist (document walk-throughs, provide item approvals, monitor list) |
| 27 | Coordinate As-built drawings |
| 28 | Coordinate operations manuals |
| 29 | Coordinate document archives |
| 30 | Assist with opening ceremonies |
| 31 | Assist with move-in |

**Post-Construction**

| | |
|---|---|
| 1 | Monitor and participate in securing approvals and certificates from all applicable agencies |
| 2 | Assist with punchlist (document walk-throughs, provide item approvals, monitor list) |
| 3 | Coordinate As-built drawings |
| 4 | Coordinate operations manuals |
| 5 | Assist with opening ceremonies |
| 6 | Assist with move-in |
| 7 | Coordinate architectural photographs |
| 8 | Resolve any lien waivers |
| 9 | Generate final budget reconciliation |
| 10 | Generate final schedule reconciliation |
| 11 | Close-out document archives |

Exhibit "A"

NS00013

# EXHIBIT B

# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Tribunal

### IN THE MATTER OF ARBITRATION BETWEEN

BRAILSFORD & DUNLAVEY      :
                                 :

    Claimant                  :
                                 :

    and                      :   AAA # 16 180 00389 07
                                 :

AMERISPORTS, LLC – THE NASHVILLE  :
SOUNDS BASEBALL CLUB            :
                                 :

    Respondent             :

### ARBITRATION AWARD

I , THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated August 15, 2006, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby, AWARD, as follows:

A Demand for Arbitration was filed by Brailsford & Dunlavey ("Claimant"). A Counterclaim against Claimant was filed by Amerisports, LLC – The Nashville Sounds Baseball Club ("Respondent"). Hearings were held on November 28, 29 and 30 in Washington, DC in the presence of both parties and counsel. After consideration of all of the testimony of all the witnesses and the exhibits submitted by the parties, the following Award is entered.

### The Claim

1. The Pre-Planning services fee of $150,000 is awarded.

2. Unpaid service fees through 12/31/06 of $280,222 are awarded. The evidence, both oral and written, indicates that although the contract permitted $40,037 to be billed in August and September 2006, the Claimant only billed $20,000 each month and has not asserted their entitlement to any additional monies in this Arbitration for those two months. As a

result, I find that any claim for that money has been waived.

3.  Expenses in the amount of $31,715.75 as claimed and detailed within Exhibit P25, J1 and P26, are also awarded.

4.      I find from the evidence, both oral and written, that there was a termination for convenience on or about January 1, 2007 and award an additional $80,074 under the contract.

5.      I also award interest in the amount claimed of $27,877.15.  The total amount awarded on the claim as of November 30, 2007 is $569,888.90 plus interest from December 1, 2007 in accordance with the contract in the amount of *Wall Street Journal* prime plus 1% until the award is fully paid.

The primary reasons for this decision are summarized as follows:

The "side letter," Exhibit P2, is plain and unambiguous in applying solely to accrued fees and penalties.  I do not find that it establishes a contingency and/or a condition precedent as claimed by Respondent.  Further, given the over $1,000,000 in commitment under the HOK contract which Respondent concedes was not contingent, I do not find it credible that Respondent understood its obligations to Claimant to be solely moral obligations absent a "live" project with full funding. I find the side letter evidence on the issue of fraudulent inducement non-persuasive.  Further, the integration clause in the contact, even if it does not bar consideration of Respondent's arguments on contingency and fraudulent inducement, is plain and unambiguous, especially when 14 days elapse between the side letter and signature by Respondent on the Project Management Agreement (PMA).

Under the terms of the PMA, there is no requirement of activity during the 60-day notice

2

period for a termination for convenience. As a consequence, I do not believe either the quantity or quality of the work done by Claimant in the period from January 1, 2007 through February 29, 2007 is relevant. I find the activity of Claimant subsequent to February 28, 2007 consistent with its prior "at risk" activity to revive the Project to the extent such revival would benefit its own interests and is not compensable.

## Counterclaim

In the absence of evidence of the withholding from Respondent of information known only to Claimant and not provided to Respondent, the only evidence of negligence produced by Respondent is the fact that Strueuer Brothers Eccles & Rouse ("SBER") failed to perform under the February 2006 Memorandum of Understanding. This does not constitute adequate proof of negligence. Respondent failed to produce any evidence on exactly how the advice of Claimant became negligent simply because it was wrong about the future conduct of a third party. By that standard, Claimant is a guarantor of SBER's performance, a position Respondent concedes that Claimant did not adopt.

I further find that the damages in the Counterclaim are consequential damages and not recoverable under the terms of the Project Management Agreement. Nothing in the evidence indicates that such damages were within the contemplation of the parties at the time they contracted.

The Counterclaim also fails, as Respondent did not demonstrate how the conduct of Claimant in its performance of the contract was less than what should be expected of a reasonable Program Manager performing this contract. The subjective evaluation of the probability of a development partner performing is exactly the kind of risk undertaken daily by developers. If

3

Respondent intended to shift that risk to Claimant, the language in the Project Management Agreement does not support that shift.

On the Respondent's Counterclaim, I find that it is unsupported by a preponderance of the evidence. During the hearing, it should be noted that the Respondent voluntarily withdrew with prejudice its fraud claim.

The administrative filing and case service fees of the AAA, totaling $12,500.00, shall be borne entirely by Amerisports, LLC - The Nashville Sounds. The fees and expenses of the arbitrator, totaling $8,775.00, shall be borne entirely by Amerisports, LLC - The Nashville Sounds. Therefore, Amerisports, LLC - The Nashville Sounds shall reimburse Brailsford & Dunlavey the sum of $12,887.50, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Brailsford & Dunlavey.

This Award is a final determination of all claims brought before the Arbitrator. All claims not expressly granted herein are hereby Denied.

I, James F. Lee Jr., do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

_January 3, 2008_
Date

James F. Lee Jr., Esquire
Arbitrator

4

E
08-186
RCL

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

Brailsford & Dunlavey, Inc.

Nashville Sounds Baseball Club, L.P.

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ 11111<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ 88888<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF<br>LAND INVOLVED |

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Duane Thompson, Esq., Jonathan Fine, Esq.
Baach Robinson & Lewis PLLC
1201 F Street, NW, Suite 500
Washington, DC 20004; tel: 202-833-8900

Case: 1:08-cv-00186
Assigned To : Lamberth, Royce C.
Assign. Date : 1/31/2008
Description: General Civil

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| □ 410 Antitrust | □ 310 Airplane<br>□ 315 Airplane Product Liability<br>□ 320 Assault, Libel & Slander<br>□ 330 Federal Employers Liability<br>□ 340 Marine<br>□ 345 Marine Product Liability<br>□ 350 Motor Vehicle<br>□ 355 Motor Vehicle Product Liability<br>□ 360 Other Personal Injury<br>□ 362 Medical Malpractice<br>□ 365 Product Liability<br>□ 368 Asbestos Product Liability | □ 151 Medicare Act<br><br>Social Security:<br>□ 861 HIA ((1395ff)<br>□ 862 Black Lung (923)<br>□ 863 DIWC/DIWW (405(g)<br>□ 864 SSID Title XVI<br>□ 865 RSI (405(g)<br>Other Statutes<br>□ 891 Agricultural Acts<br>□ 892 Economic Stabilization Act<br>□ 893 Environmental Matters<br>□ 894 Energy Allocation Act<br>□ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ◉ E. General Civil (Other) | OR | ○ F. Pro Se General Civil |
|---|---|---|

**Real Property**
- □ 210 Land Condemnation
- □ 220 Foreclosure
- □ 230 Rent, Lease & Ejectment
- □ 240 Torts to Land
- □ 245 Tort Product Liability
- □ 290 All Other Real Property

**Personal Property**
- □ 370 Other Fraud
- □ 371 Truth in Lending
- □ 380 Other Personal Property Damage
- □ 385 Property Damage Product Liability

**Bankruptcy**
- □ 422 Appeal 28 USC 158
- □ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- □ 535 Death Penalty
- □ 540 Mandamus & Other
- □ 550 Civil Rights
- □ 555 Prison Condition

**Property Rights**
- □ 820 Copyrights
- □ 830 Patent
- □ 840 Trademark

**Federal Tax Suits**
- □ 870 Taxes (US plaintiff or defendant
- □ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- □ 610 Agriculture
- □ 620 Other Food & Drug
- □ 625 Drug Related Seizure of Property 21 USC 881
- □ 630 Liquor Laws
- □ 640 RR & Truck
- □ 650 Airline Regs
- □ 660 Occupational Safety/Health
- □ 690 Other

**Other Statutes**
- □ 400 State Reapportionment
- □ 430 Banks & Banking
- □ 450 Commerce/ICC Rates/etc.
- □ 460 Deportation

- □ 470 Racketeer Influenced & Corrupt Organizations
- □ 480 Consumer Credit
- □ 490 Cable/Satellite TV
- □ 810 Selective Service
- □ 850 Securities/Commodities/ Exchange
- □ 875 Customer Challenge 12 USC 3410
- □ 900 Appeal of fee determination under equal access to Justice
- □ 950 Constitutionality of State Statutes
- ☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Court from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Application to confirm arbitral award pursuant to 9 U.S.C. 9 and 28 U.S.C. 1331

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** 569,888.90 | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☐   NO ☐ |

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  1/31/08    SIGNATURE OF ATTORNEY OF RECORD    X *[signature]*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.